IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEVAL HARRELL, | CASE NO. 1:24-CV-01214-DAR |
| Petitioner, | JUDGE DAVID A. RUIZ |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN MISTY MACKEY, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

Representing himself, Petitioner Deval Harrell, a prisoner in state custody, applied for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1 at PageID 15). The District Court has jurisdiction under § 2254(a) and the matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Sept. 19, 2024). On November 19, 2024, Respondent Warden Misty Mackey, as Warden of the Lake Erie Correctional Institution (hereinafter, the State), filed the Return of Writ. (ECF #7). Mr. Harrell did not file a Traverse.

Mr. Harrell brings one ground for habeas relief. For the reasons that follow, I recommend the District Court **DISMISS** the sole ground for relief as not cognizable, **DISMISS** the petition, and **DENY** Mr. Harrell a certificate of appealability (COA).

PROCEDURAL HISTORY

A.      **State court factual findings**

The Ohio Court of Appeals, Eighth Appellate District, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Mr. Harrell rebuts this

presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Eighth District

determined:

{¶3} On January 29, 2021, various government agents from the Ohio Investigative Unit, the Cleveland police, and the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives had been conducting a drug interdiction operation in a particular area surrounding St. Clair Avenue in Cleveland. One of the agents involved in the operation, Robert Boldin, testified that earlier that night he noticed an individual, later identified as Teal Johnson, driving along St. Clair Avenue, pulling onto various gas station lots but not stopping to get gas or anything from the accompanying stores. Agent Boldin testified that he and other agents followed Johnson discreetly from station to station and eventually to a Shell station on the corner of East 115th Street and St. Clair Avenue where she met appellant.

{¶4} Johnson testified that she pulled up to a pump, and appellant pulled up to the pump on the opposite of her and asked her if she "liked to party," which she took to mean that he was offering to sell her drugs. Johnson testified that she was a recently relapsed drug addict and, based on her belief that appellant was offering to sell her drugs, she got in his vehicle.

{¶5} Agent Boldin saw Johnson get into the rear of appellant's vehicle and saw appellant turn all the way around in the driver's seat and reach with his left hand towards the back seat where Johnson was. Based on his previous observations of Johnson, as well as what he observed inside appellant's vehicle, Agent Boldin determined that there was reasonable suspicion of a possible drug transaction and announced his intention to approach appellant's vehicle; the agent radioed for backup assistance.

{¶6} Back-up law enforcement assistance arrived and maneuvered their vehicles in a position so as to prevent the potential flight of appellant. Agent Boldin parked his vehicle in front of appellant's vehicle, and another agent parked to the rear of appellant's vehicle. Agent Boldin testified that, although the law enforcement officials were in undercover vehicles, the vehicles were equipped with either sirens or police lights or both, which were activated as the officials responded to the scene. After the officials responded to the scene, appellant reversed his vehicle and hit the agent's vehicle parked behind him.

{¶7} Agent Daniel Mone testified as to what transpired next. Upon seeing appellant strike Agent Phillips's vehicle, Agent Mone approached the driver's window of appellant's vehicle with his service weapon drawn and ordered appellant to put his vehicle in park and turn it off. Agent Mone also banged on the window of appellant's vehicle and told him to not put the vehicle in drive and to keep his hands off the steering wheel. Agent Mone and appellant made eye contact. At that time, the agent had one foot on the running board of appellant's vehicle and the other foot on the

ground. According to Agent Mone, appellant sat in his vehicle for a moment as if he were contemplating whether he was going to comply with the agent's commands. Ultimately, appellant did not follow any of Agent Mone's commands and, instead, put his vehicle in drive, turned the wheel, and accelerated.

{¶8} Agent Mone testified that appellant turned his steering wheel so hard that Agent Mone was thrown off appellant's vehicle and pushed into another vehicle on the scene. The agent explained that he was pinched in between the other vehicle and appellant's vehicle and thought he was going to get crushed between the two vehicles. Agent Mone's right buttock was on the other vehicle while the front of his right thigh was on appellant's vehicle. The agent testified that the impact hurt, but admitted that it was "not extremely painful" and that he suffered only minor bumps and bruises from being pushed up and pinned between the two cars. Appellant sped away from the gas station. His vehicle "jumped" the gas station's curb, and struck a utility pole wire. Appellant then sped down the street. Video surveillance from the gas station captured much of the above-described events and was played for the jury.

{¶9} Johnson was still in the vehicle. She testified that, in the moments leading up to appellant speeding away, she saw "a lot of cars come screeching in at one time and [she] didn't know what it was." However, she "just happened to look up and * * * saw a little—the red and blue * * * small light * * * flashing, and [she] realized they were all police." Johnson testified that upon realizing the cars were the police, she said out loud "[w]ell, these are the police in front of us." Appellant then sped away. Johnson admitted that she voluntarily got into appellant's vehicle, but testified that she did not want to be in the car when the police arrived and that she was unable to get out of the vehicle once appellant sped away because "we were just, like, going too fast * * * I wouldn't be able to just jump out of the car. I wouldn't get out while we're speeding away. I mean, without probably killing myself."

{¶10} Shortly after speeding away from the gas station, appellant lost control of his vehicle, drove into a vacant lot, and crashed into a fence. Appellant fled the scene and was apprehended after a 20–30-minute search. Johnson was unable to get out the vehicle and the police had to remove her through a window.

{¶11} Appellant testified. He admitted that he has prior convictions for receiving stolen property, conveyance of illegal substances in a detention center, and drug trafficking. His last conviction was around 2011, and he testified that he has not been involved with drugs since then.

{¶12} In regard to this case, appellant testified that he was driving on St. Clair Avenue, on his way to his brother's house, when he noticed a "nice-looking" lady (Johnson) at the Shell gas station and decided to stop to talk to her. Appellant pulled up to the opposite side of the pump where Johnson was and asked her if she liked to party; Johnson responded "yes."

3

{¶13} According to appellant, Johnson got out of her vehicle and went into the gas station store, he presumed to pay for her gas. He testified that while she was in the store he was finding music to play and did not look out of his window at all. Johnson came back to his vehicle, and he told her to get in the back because the front passenger seat was wet. Upon Johnson getting in the back, appellant immediately turned around to talk to her. The next thing appellant saw were "bright lights." Appellant denied that he saw red or blue flashing lights or the police. Rather, he thought he was being robbed and he fled because of his "street instincts."

{¶14} Appellant testified that he did not see any of the law enforcement officials on the scene and did not hear any of their commands because he was turned around and the music was turned up loud. He said he asked Johnson if she knew what was going on. He could not hear her answer, but read her lips that she did not. He testified that if he had known the police were there he would have stopped because he was not doing anything wrong.

{¶15} On cross-examination, the assistant prosecuting attorney played the surveillance video from the gas station for appellant. Appellant admitted seeing the police on the video. He described one officer as "pretty much kissing the window" of his (appellant's) vehicle and another officer as "pretty much like on the window." Appellant reiterated that at the time of the within incident he was not trafficking in drugs, having stopped that activity years prior.

{¶16} On this evidence, the jury returned verdicts of guilty on Count 1, felonious assault, Count 2, kidnapping, and Count 3, failure to comply. The jury returned a verdict of not guilty on Count 4, resisting arrest. The trial court sentenced appellant to an eight-year prison term.

(ECF #7-1 at PageID 166-71; *see also State v. Harrell*, No. 111293, 2022 WL 11494960, at *1-3

(Ohio Ct. App. Oct. 20, 2022), *appeal not allowed*, 202 N.E.3d 720 (Ohio 2023) (table)) (citation

and footnotes omitted, alterations in original).

**B.  Direct appeal**

On February 18, 2022, through counsel, Mr. Harrell timely appealed his convictions to the

Eighth District. (ECF #7-1 at PageID 100). He raised three assignments of error:

1.    The convictions on Counts 1 and 2 were obtained on insufficient evidence;

2.    The trial court erred when it permitted the government to impeach Mr. Harrell's credibility under Evid.R 609 without first balancing the probative value against the risk of prejudice; and

4

3.     The trial court erred when it failed to order a new pretrial investigation report and, rather than proceeding without one, used an old one. This error denied Mr. Harrell his right to due process of law.

(*See id.* at PageID 115). On October 20, 2022, the Eighth District affirmed. (*See id.* at PageID 165).

On December 5, 2022, through counsel, Mr. Harrell timely appealed the Eighth District's decision to the Supreme Court of Ohio. (*Id.* at PageID 190-91). He advanced two propositions of law:

1.     Absent evidence that the defendant used an automobile for the specific purpose of inflicting or attempting to inflict physical harm, an automobile is not a "deadly weapon" under R.C. 2923.11 and R.C. 2903.11.

2.     A trial court errs when its refuses to order a new presentence investigation report but utilizes an old presentence investigation report in sentencing an offender.

(*Id.* at PageID 196). On February 14, 2023, the Supreme Court of Ohio declined to hear his appeal. (*Id.* at PageID 221; *see also Harrell*, 202 N.E.3d 720).

## C.    Motion to vacate, set aside, or correct the judgment or sentence

On May 12, 2023, representing himself, Mr. Harrell filed a "motion to vacate, set aside, or correct the judgment or sentence" in the trial court. (ECF #7-1 at PageID 222). He advanced six errors:

1.     Violated Fourth Amendment right to unreasonable search and seizures, Detectives did not have probable cause for an investigative detention;

2.     The trial court erred because it failed to conduct an adequate inquiry into defendant's dissatisfaction with counsel;

3.     Incomplete jury instruction, trial court erred by not instructing the jury on all offenses of assault;

4.     The trial court erred when it dismissed the motion for acquittal;

5.     Prosecutorial misconduct from improper remarks during closing argument; and

6.  The trial court erred by not merging the kidnapping and felonious-assault charges though they were allied offenses of similar import.

(*Id.* at PageID 223) (cleaned up). On September 14, 2023, the trial court denied the motion. (*Id.* at PageID 225).

## D. Delayed application to reopen the direct appeal

On January 9, 2024, representing himself, Mr. Harrell sought permission to file a delayed application to reopen his direct appeal under Ohio Appellate Rule 26(B). (ECF #7-1 at PageID 226-34). In his attached application, he proposed seven assignments of error:

1.  Mr. Harrell's constitutional right against unreasonable seizures in violation of the Fourth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution was violated by police.

2.  The trial court abused its discretion when it denied Mr. Harrell's request to appoint new counsel where counsel failed to perform her basic duties.

3.  The trial court incorrectly and improperly instructed the jury on the definition of "physical harm" rather than "serious physical harm."

4.  The trial court erred by failing to conduct a full allied-offenses-of-similar-import analysis in violation of Mr. Harrell's Fifth Amendment right against double jeopardy and his right to due process under the Fourteenth Amendment.

5.  The trial court erred when it failed to instruct the jury on lesser-included offenses.

6.  The trial court erred when it failed to grant a mistrial due to the prosecution's improper opening and closing remarks.

7.  Mr. Harrell was deprived of the effective assistance of counsel where his trial counsel's performance fell below an objective standard of reasonableness which prejudiced him receiving a fair trial.

(*Id.* at PageID 238-39, 241-43) (cleaned up). On February 28, 2024, the Eighth District denied permission, concluding Mr. Harrell did not establish good cause for his untimely filing. (*See* ECF

6

#7-1 at PageID 269-73; *see also State v. Harrell*, No. 111293, 2024 WL 863696, at *1-2 (Ohio Ct.

App. Feb. 28, 2024), *appeal not allowed*, 234 N.E.3d 519 (Ohio 2024) (table)).

On April 12, 2024, Mr. Harrell timely appealed the Eighth District's decision to the

Supreme Court of Ohio. (*Id.* at PageID 274). He advanced two propositions of law:

1.    Where Appellant presents good cause for untimely filing an application, the
      Court of Appeals errs by denying such an application.

2.    Where Appellant presented a genuine issue as to whether he was deprived of
      the effective assistance of counsel on appeal, the court should have at least
      granted the first stage of App.R. 26(B).

(*Id.* at PageID 277). On May 28, 2024, the Supreme Court of Ohio declined to hear his appeal. (*Id.*

at PageID 299; *see also Harrell*, 234 N.E.3d 519).

### FEDERAL HABEAS PETITION

Before this Court, Mr. Harrell raises one ground for relief:

The state court's adjudication denying petitioner's application for reopening direct
appeal based on counsel's failure to raise issues that were obvious in the record and
meritorious resulted in a decision that was contrary to, or involved an reasonable
application of, clearly established federal law as determined by the Supreme Court.

(ECF #1-1 at PageID 19).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Harrell's

habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts

are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier

to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v.

Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-

court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v.*

7

*Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

Accordingly, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state-court decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state-court decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but

unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under § 2254(d)(2), a state court's factual determinations stand unless they too are objectively unreasonable in light of the evidence presented in state court. *See Harrington*, 562 U.S. at 100. The Supreme Court has repeatedly emphasized "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Under AEDPA, "a determination of a factual issue made by a state court shall be presumed to be correct" unless the petitioner offers clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2554(e)(1).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v.*

*Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal habeas review is limited to federal claims that a state court decided on the merits. Claims that were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not reviewable by a federal habeas court. *See Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

**State-law Claims Not Cognizable on Federal Habeas Review**. Federal habeas review is available only for claims that "challenge the legality of [the petitioner's] custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Put another way, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F.App'x 575, 582 (6th Cir. 2010); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal

10

habeas process."); *see also Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial.") (quotation omitted); *see also Engle*, 456 U.S. at 121 n.21 ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted).

Federal habeas review is generally not available to decide whether a state court complied with state law or state procedural requirements. *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). A federal habeas court "does not function as another state appellate court to review a state court's interpretation of its own law or procedure." *Id.* Instead, a federal habeas court is bound by "[a] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

A petitioner cannot justify habeas relief by simply asserting that a state-law error violates the federal constitution. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010). But habeas relief may be available if an error of state law made the criminal process "fundamentally unfair." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006). "[T]he category of infractions that violate fundamental fairness is defined very narrowly," and includes only state rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007) (cleaned up). The habeas petitioner must show "the principle of procedure violated by the rule (and allegedly required by due process) is fundamental. *Id.*

**Procedural Default.** A federal habeas court may not review claims that have been procedurally defaulted under state law. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). There

are two avenues by which a petitioner may procedurally default a claim. *Williams*, 460 F.3d at 806. One way a procedural default occurs is if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* To determine whether that failure bars review of a habeas claim, courts in the Sixth Circuit ask four questions: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to meet that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can bar review of the federal constitutional claim; and (4) whether the petitioner can show cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

The other way a claim can be procedurally defaulted is if a petitioner does not raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To have a habeas claim considered on the merits, a petitioner must present that federal claim at "each and every level" of the state courts. *See Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003). If a petitioner did not first raise his federal habeas claim before the state courts and state law would no longer allow the petitioner to raise the claim in state court, the claim is procedurally defaulted. *Williams*, 460 F.3d at 806.

**Excusing a Procedural Default.** A procedural default is not the end of a habeas claim. A petitioner can overcome a procedural bar by showing either (1) cause for the default and actual prejudice because of the alleged violation of federal law or (2) not considering the claims will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 749. Success here does not entitle

a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim (subject to the standard of review above) when the claim would otherwise be procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor any ignorance of the law and procedural filing requirements are enough to show cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice. *Murray*, 477 U.S. at 494. Rather, the petitioner must show the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Id*. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be

13

supported by new, reliable evidence that was not presented at trial and is "so strong a court cannot have confidence in the outcome of the petitioner's trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Such evidence can include exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. *Id.* But this evidence "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

ANALYSIS

**A.  Because Mr. Harrell's ground for relief challenges the denial of state post-conviction relief and not the constitutionality of his convictions, it is not cognizable in habeas corpus.**

Mr. Harrell's sole ground for relief challenges the Eight District's denial of permission to file a delayed application to reopen his appeal under Ohio Appellate Rule 26(B):

> The state court's adjudication denying petitioner's application for reopening direct appeal based on counsel's failure to raise issues that were obvious in the record and meritorious resulted in a decision that was contrary to, or involved an reasonable application of, clearly established federal law as determined by the Supreme Court.

(ECF #1-1 at PageID 19). Mr. Harrell concludes:

> Petitioner contends he presented a genuine issue of ineffective assistance of appellate counsel, requiring the reopening of the appeal pursuant to App.R. 26(B), and the Court of Appeals decision denying the application to reopen the appeal resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court in *Strickland v. Washington*.

(ECF #1-1 at PageID 43). He argues extensively that he had good cause for his delayed filing in state court (*id.* at PageID 21-24) and that his appellate counsel should have raised seven viable claims in his direct appeal (*id.* at PageID 24-42). His petition is entirely organized around arguing how the Eighth District should have reopened his direct appeal.

This is not a claim that can be redressed through habeas corpus because it does not challenge his underlying convictions. Rather, it exclusively challenges the denial of reopening, a

14

collateral post-conviction proceeding. The writ of habeas corpus is available only for claims that "challenge the legality of [the petitioner's] *custody*" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). The writ is not the proper means for a prisoner to challenge errors in state post-conviction proceedings because such claims do not address the underlying conviction under which the prisoner is imprisoned. *See Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).

The Supreme Court of Ohio held Ohio Appellate Rule 26(B)'s procedure is a part of collateral post-conviction review, not direct appeal. *See Lopez v. Wilson*, 426 F.3d 339, 342-52 (6th Cir. 2005). Accordingly, claims that the Ohio Court of Appeals erroneously denied permission to file a delayed Rule 26(B) application are outside the scope of habeas corpus review. *Cress*, 484 F.3d at 853; *Kirby v. Dutton*, 794 F.2d 245, 248 (6th Cir. 1986) ("the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings."). Because Mr. Harrell's petition attacks the correctness of the Eighth District's ruling on his delayed application to reopen his direct appeal, he has not stated a claim reviewable in habeas corpus. *See Smith v. Warden, Chillicothe Corr. Inst.*, No. 1:14-cv-677, 2015 WL 5730347, at *12 (S.D. Ohio July 22, 2015) (collecting cases denying habeas relief for errors in Rule 26(B) proceedings), *report and recommendation adopted*, 2015 WL 5725815 (S.D. Ohio Sept. 29, 2015). While many of Mr. Harrell's arguments touch on his conviction, each argument is that appellate counsel failed to raise the argument on direct appeal and, by extension, the Eighth District should have granted his delayed Rule 26(B) application. (*See* ECF #1-1 at PageID 24-43). As written, Mr. Harrell's petition does not challenge his custody, but is non-cognizable challenge to the denial of his collateral Rule 26(B) application.

15

I thus recommend the District Court **DISMISS** the ground for relief as not cognizable.

**B.      Even if the ground for relief were re-characterized as arguing ineffective assistance of appellate counsel, that claim is procedurally defaulted.**

Mr. Harrell's petition could be construed to raise a claim of ineffective assistance of appellate counsel. Mr. Harrell is representing himself without the benefit of counsel, so his pleadings are interpreted liberally and held to less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). In the Sixth Circuit, "[t]he appropriate liberal construction requires active interpretation in some cases to construe a pro se petition 'to encompass any allegation stating federal relief.'" *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (quoting *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)). While Mr. Harrell's petition as written challenges the denial his delayed Rule 26(B) application, it extensively alleges the seven underlying claims of ineffective assistance of appellate counsel. (ECF #1-2 at PageID 24-42).

The State argues Mr. Harrell procedurally defaulted any claims of ineffective assistance of appellate counsel because his Rule 26(B) application was untimely. (ECF #7 at PageID 76-77). Mr. Harrell agrees he procedurally defaulted the claims because of his untimely application but he advances two arguments to show cause and prejudice to excuse the default. (ECF #1-1 at PageID 20-24).

First, Mr. Harrell argues his appellate counsel was aware he wanted to raise other claims and did not notify him of the time requirement for filing a Rule 26(B) application. (ECF #1-1 at PageID 21-22). However, this is not cause. Ineffective assistance of counsel may constitute cause for a procedural default only at a stage of the proceedings where a petitioner has a Sixth Amendment right to counsel. *Wilson v. Hurley*, 382 F.App'x 471, 478 (6th Cir. 2010). The right to

16

appointed counsel "extends to the first appeal of right, and no further" and does not extend to collateral post-conviction proceedings. *Id.*; *see also Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987). Applying this principle, the Sixth Circuit has consistently held that appellate counsel's failure to notify a client of the 90-day deadline to file a Rule 26(B) application is not cause to overcome a procedural default. *See, e.g., Wilson,* 382 F.App'x at 478; *see also Griffin v. Lazaroff,* No. 1:17-cv-917, 2020 WL 1452302, at *15 (N.D. Ohio Mar. 25, 2020) (Ruiz, M.J.) (rejecting excuse for procedural default of a claim "because appellate counsel allegedly did not advise [petitioner] about the filing procedures governing reopening applications").

Nor does appellate counsel's knowledge of other issues Mr. Harrell wanted to argue in direct appeal create an independent constitutional obligation to inform him of possible collateral relief. The lack of a constitutional requirement to notify a client of the Rule 26(B) process arises in a background where appellate advocacy requires focusing on the strongest arguments and omitting others. The norms of effective appellate advocacy "emphasize[] the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983). As Mr. Harrell's counsel explained, this is what he did. (*See* ECF #7-1 at PageID 261) ("I was not able to or decided not to raise every issue you flagged—we have to choose our battles"). While it may be good client service to tell a client how to raise other arguments in a collateral proceeding while counsel prepared a discretionary appeal to the Supreme Court of Ohio, the Sixth Amendment does not require that advice and thereby excuse non-compliance with mandatory deadlines. *See Strickland v. Washington,* 466 U.S. 668, 689 (1984). ("[T]he purpose of the effective assistance guarantee of the Sixth Amendment is

not to improve the quality of legal representation" but "to ensure that criminal defendants receive a fair trial.").

Second, Mr. Harrell maintains his appellate counsel was ineffective for "failing to communicate with Petitioner on important decisions and to keep Petitioner informed of important developments," which "rendered Petitioner ignorant of the available collateral proceedings after direct appeals" and "caused Petitioner to file the instant application for reopening beyond the 90-day statute of limitation." (ECF #1-1 at PageID 23). This argument recasts appellate counsel's failure to inform Mr. Harrell of the Rule 26(B) procedure as a general failure to communicate during direct appeal, a proceeding where Mr. Harrell had a right to counsel. Mr. Harrell does not explain his claim or how his counsel should have communicated with him beyond not informing him of the Rule 26(B) process which, as addressed above, is not ineffective assistance. The record also undercuts Mr. Harrell's claim by detailing the communication between counsel and client. Mr. Harrell's counsel advised he filed the appellate brief and the expected timeline for the proceeding. (ECF #7-1 at PageID 261). His counsel also informed Mr. Harrell of the appellate court's unfavorable decision and advised him about pursuing a discretionary appeal to the Supreme Court of Ohio. (*Id.* at PageID 262). Thus, Mr. Harrell has not established how his appellate counsel's communication was ineffective as not advising the defendant of the deadline by which to file a Rule 26(B) application is not ineffective assistance.

Because Mr. Harrell has not established his appellate counsel was ineffective, had he stated a cognizable claim that counsel should have raised the seven issues Mr. Harrell identified, that claim would be procedurally defaulted.

CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Harrell has not made a substantial showing that he was denied any federal constitutional right. Jurists of reason would not find it debatable whether the grounds for relief are cognizable federal constitutional claims or are procedurally defaulted. I thus recommend the District Court **DENY** Mr. Harrell a COA for the sole ground of his petition.

CONCLUSION AND RECOMMENDATION

For these reasons, I recommend the District Court **DISMISS** the sole ground for relief as not cognizable and **DISMISS** the petition. I further recommend the District Court **DENY** Mr. Harrell a certificate of appealability for the sole ground of his petition.

Dated: June 17, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).